IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARAH COLLINS,

               Plaintiff,

     v.

PEACEHEALTH,

             Defendant.

Case No.: 3:22-cv-01946-AN

OPINION AND ORDER

**Adrienne Nelson, District Judge**

        Plaintiff Sarah Collins ("Collins") brings this action against defendant PeaceHealth, alleging whistleblower retaliation in violation of the Revised Code of Washington § 43.70.075(1)(c), wrongful termination in violation of public policy, unpaid wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(b), and retaliation for filing a complaint of unpaid wages in violation of the FLSA, 29 U.S.C. § 215(a).

        Defendant filed a motion to dismiss plaintiff's complaint for improper venue or, in the alternative, to transfer this action to the Western District of Washington. Mot. to Dismiss or Transfer Venue ("Mot. to Dismiss"), ECF [11]. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d). For the reasons outlined below, the motion to dismiss is DENIED, and the motion to transfer venue to the Western District of Washington is GRANTED.

## LEGAL STANDARD

        A civil action may only be brought in:

"(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
"(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
"(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

1

28 U.S.C. § 1391(b).  If a case falls into any one of these three categories, venue is proper; if it does not, venue is improper.  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).  The plaintiff bears the burden of demonstrating that venue is proper.  *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

If venue is improper, a court may dismiss the case or, "if it be in the interest of justice," transfer the case to any district in which it could have been properly brought.  28 U.S.C. § 1406(a).  The decision whether to dismiss or transfer a case is within the discretion of the court.  *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992) ("Even though the federal defendants originally requested transfer rather than dismissal, the district court did not abuse its discretion by dismissing.").  The Ninth Circuit, however, "has taken a broad view of when transfer is appropriate, recognizing that '[n]ormally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating.'"  *Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc.*, 793 F.3d 991, 996 (9th Cir. 2015) (quoting *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (internal citation and quotation marks omitted)).

## BACKGROUND

Plaintiff is a registered nurse and a resident of Portland, Oregon.  Compl., ECF [1], at ¶¶ 4,6.  Defendant is a nonprofit hospital facility located in Vancouver, Washington.  *Id.* ¶¶ 5, 7.  Plaintiff was employed as a nurse in defendant's intensive care unit in Vancouver.  *Id.* ¶¶ 6-7.

In March 2020, plaintiff, along with other nurses, emailed a complaint to PeaceHealth managers and executives, expressing concerns about defendant's health and safety protocols relating to the COVID-19 pandemic.  *Id.* ¶ 10.  The nurses asked for training and testing in the use of personal safety equipment, additional space to isolate contagious patients, and suggested safety policies for visitors and staff.  *Id.*

On April 27, 2020, plaintiff filed a complaint with the Washington State Department of Health (the "Health Department") regarding defendant's response to COVID-19, including failing to fit test

employees for respirators or sanitize surfaces.  *Id.* ¶ 11.  The Health Department made "substantiated findings" against defendant.  *Id.*

That same month, plaintiff appeared in an Oregon Public Broadcasting report in which she expressed concerns about defendant's health and safety protocols.  *Id.* ¶ 12.

In December 2020, plaintiff learned that an open job position at PeaceHealth, which was not publicly posted, was given to a less experienced candidate.  *Id.* ¶ 13.  Plaintiff alleges that she would have applied for the job had it been publicly posted.  *Id.*  Plaintiff raised the issue with her manager, Jimmy Chan ("Chan"), who told her that he had been "warned" about plaintiff, that PeaceHealth management had animus toward her, and that "it would not be a bad idea" for plaintiff to look for a position with a different employer.  *Id.*

Following this conversation, plaintiff applied and interviewed for a position at a different hospital and listed Chan, who stated he would provide a positive evaluation, as a reference.  *Id.* ¶ 14.  In January 2021, plaintiff learned that she was not offered the position at the other hospital, and that Chan had provided the hospital with a negative evaluation.  *Id.*  Plaintiff complained to defendant's human resources department and to Chan that she believed the negative reference was in retaliation for her statements about defendant's health and safety protocols.  *Id.*

On February 18, 2021, plaintiff emailed a complaint to PeaceHealth managers and administrators, alleging retaliation for reporting workplace health and safety concerns.  *Id.* ¶ 17.  She also filed a complaint with the Occupational Safety and Health Administration ("OSHA").  *Id.*  Later that month, Chan resigned.  *Id.*

In August 2021, plaintiff started a Facebook group for PeaceHealth nursing staff to discuss their health and safety concerns.  *Id.* ¶ 18.

On September 5, 2021, plaintiff emailed defendant's CEO, Sean Gregory ("Gregory"), the Chief Nursing Officer, Holly Tyler ("Tyler"), and another supervisor, Lee Cushway ("Cushway") regarding "workplace issues and the high patient case load in the ICU."  *Id.* ¶ 19.  On September 6, Gregory responded that defendant was "working on the staffing problem" and that defendant shared plaintiff's concerns.  *Id.*

¶ 20.  On September 7, 2021, plaintiff responded to Gregory with examples of specific incidents related to understaffing, and requested hazard pay, crisis charting, and ancillary staff.  *Id.* ¶ 21.  Plaintiff raised these same issues at a staffing meeting held by Gregory and Cushway on September 14, 2021.  *Id.* ¶ 23.

On September 10, 2021, plaintiff was offered an interview with KATU regarding the working conditions of nurses during the pandemic.  *Id.* ¶ 22.  She informed Tyler about her decision to participate in the interview, and Tyler responded positively.  *Id.*  Plaintiff participated in the interview on September 15, 2021.  *Id.* ¶ 24.  Shortly after the interview, Cushway told plaintiff that Gregory had instructed him to notify plaintiff that the interview may violate defendant's media policy, and that "they would have to wait and see" what happened after the interview aired to determine if there would be negative consequences.  *Id.*  Later that same day, Cushway left a message for plaintiff, which stated that she was being placed on administrative leave and should not come to work the following day.  *Id.*  Plaintiff emailed Gregory to ask about whether placing her on administrative leave was consistent with PeaceHealth's mission and reminded him of her prior complaints about retaliation.  *Id.* ¶ 25.

On September 17, 2021, defendant commenced an investigation of plaintiff.  *Id.* ¶ 26. Plaintiff learned that she was placed on administrative leave due to an alleged violation of defendant's media policy and alleged concern about an incorrect dosage of medication given to a patient.  *Id.*  Plaintiff remained on leave for four months and participated in a second interview about the medication administration allegation.  *Id.* ¶¶ 26-27.

On October 2, 2021, plaintiff filed a whistleblower complaint with the Health Department. *Id.* ¶ 28.  After plaintiff filed the whistleblower complaint, defendant expanded the medication complaint and informed plaintiff that she was being investigated for alleged narcotics diversion.  *Id.* ¶ 29.  It required plaintiff to submit to urinalysis and hair follicle testing.  *Id.*  Plaintiff alleges that hair follicle testing is not part of PeaceHealth's drug testing policy, is not required of other employees, and that she was humiliated by having to remove a large quantity of hair, but she felt she had to submit to the testing because she was told that if she did not, she would receive an "automatic positive" result and be reported to the Washington State Board of Nursing.  *Id.*

On December 16, 2021, the Washington State Board of Nursing informed plaintiff that a complaint made against her by defendant had been closed for insufficient evidence.  *Id.* ¶ 30.  Plaintiff learned from the Board of Nursing that the complaint against her was not for narcotics diversion, but for practicing outside the scope of her nursing license.  *Id.*  That same day, plaintiff learned that defendant had stopped paying her, although it maintained that she was on administrative leave.  *Id.* ¶ 31.  Plaintiff filed a complaint with the Washington State Nurses Association regarding defendant's failure to pay her wages. *Id.*  Plaintiff alleges that she has not received any pay from defendant for the period of December 5, 2021 through January 7, 2022, and that defendant applied her paid leave bank to fund parts of her paycheck while she was on administrative leave.  *Id.* ¶ 32.

Defendant terminated plaintiff on January 7, 2022, on the basis that her administration of medication and documentation were insufficient.  *Id.* ¶ 33.  Plaintiff alleges that other nurses accused of similar violations were not terminated, and that she was singled out.  *Id.* ¶ 34.

Plaintiff filed the complaint before this Court on December 15, 2022.  Defendant filed the Motion to Dismiss Transfer Venue on March 21, 2023.

## DISCUSSION

Defendant argues that because plaintiff cannot establish venue under any of the three statutory grounds, this case should be dismissed or transferred to the Western District of Washington.

### A.    28 U.S.C. § 1391(b)(1) – Residence

Defendant argues that plaintiff cannot establish venue under 28 U.S.C. § 1391(b)(1) because defendant does not reside in Oregon.  Mot. to Dismiss 4.

A defendant entity is a resident in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]"  28 U.S.C. § 1391(c)(2). Defendant argues that while plaintiff has alleged that PeaceHealth "regularly does business in this jurisdiction," she has failed to allege that PeaceHealth is subject to the Court's personal jurisdiction.  . Mot. to Dismiss 4.

5

Federal courts must look to the law of the forum state to determine whether a party is subject to its jurisdiction. "Because Oregon's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same.'" *Tarhuni v. Holder*, 8 F. Supp. 3d 1253, 1276 (D. Or. 2014) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004)); *see* Or. R. Civ. P. 4(L). For a court to exercise personal jurisdiction over a nonresident defendant, it must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Personal jurisdiction can be established through either general jurisdiction or specific jurisdiction.

1.   *General Jurisdiction*

General jurisdiction exists when a defendant engages in "'continuous and systematic general business contacts' . . . that 'approximate physical presence' in the forum state." *Schwarzenegger*, 374 F.3d at 801 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) and *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006)). A corporation is subject to general jurisdiction where "the corporation is fairly regarded as at home." *Bristol-Myers Squibb Co. v. Superior Ct. of Calif.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "The paradigm forums in which a corporation is deemed at home are the corporation's place of incorporation and the principal place of business." *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 931 (D. Or. 2020) (citing *Goodyear*, 564 U.S. at 924). "In an 'exceptional case,'" however, "a corporation's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)).

Defendant is not subject to general jurisdiction in the District of Oregon. Plaintiff does not plead that defendant is incorporated or has its principal place of business in Oregon. Nor has plaintiff

demonstrated that this is an exceptional case in which defendant's operations in Oregon are so substantial and of a nature that renders it at home in the state.  Plaintiff states that, although it has its principal place of business and is incorporated in Washington, PeaceHealth "regularly does business in this jurisdiction," Compl. ¶ 3, and the "principal impact" of its adverse employment actions "occurred in Oregon and harmed Plaintiff, an Oregon resident."  Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss or Transfer Venue ("Pl.'s Resp."), ECF [16], at 5-6.  These allegations, however, do not describe contacts with Oregon that are so continuous and systematic as to render it as essentially at home in the state.

     2.    *Specific Jurisdiction*

     The Ninth Circuit uses a three-prong test to determine if a defendant has sufficient minimum contacts to establish specific jurisdiction:

> "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Schwarzenegger*, 374 F.3d at 802.  The plaintiff bears the burden of satisfying the first two prongs.  If the plaintiff cannot satisfy both prongs, there is no personal jurisdiction.  If the plaintiff succeeds in satisfying both prongs, the burden shifts to the defendant to "'present a compelling case'" that the exercise of jurisdiction would not be reasonable.  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

     a.    Prong One

     To satisfy the first prong, plaintiff must show that defendant either "'purposefully avail[ed] [itself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'" or purposefully directed actions at the forum state, even if those actions originated elsewhere.  *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 802).  In contracts cases, a court generally asks "whether a defendant 'purposefully avails itself of the

privilege of conducting activities' or 'consummate[s][a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Yahoo! Inc.*, 433 F.3d 1199 at 1206 (quoting *Schwarzenegger*, 374 F.3d at 802). In torts cases, the Ninth Circuit generally applies an "effects test" that asks "whether or not the actions themselves occurred within the forum" in which the actions were felt. *Id.* Put differently, the effects test "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. In applying the effects test, a defendant's relationship with a forum "must be analyzed with regard to the defendant's contacts with the forum itself, not with persons residing there. . . . The plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 277 (2014) (citing *Int'l Shoe Co.*, 326 U.S. at 319 and *Calder v. Jones*, 465 U.S. 783, 788-89 (1984)). "[A] 'mere injury to a forum resident is not a sufficient connection to the forum[]' . . . [r]ather, 'an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.'" *Picot*, 780 F.3d at 1214 (quoting *Walden*, 571 U.S. at 285).

Plaintiff argues that defendant purposefully directed actions at Oregon, satisfying the effects test. Pl.'s Resp. 7. She argues that that PeaceHealth engaged in "numerous intentional acts that violated her rights under Washington and federal law," regularly conducts business in Oregon, where it has "numerous facilities," and recruits and hires Oregon residents for employment. *Id.* at 9. Defendant knew, plaintiff alleges, that harm would be suffered in Oregon as a result of its actions, both by plaintiff and other employees who may experience a "chilling effect" from defendant's retaliation against a whistleblower. *Id.* at 10.

Plaintiff's allegations do reflect that defendant engaged in intentional acts, including disciplinary actions, investigation, reporting plaintiff to the Washington State Board of Nursing, and terminating plaintiff. These acts, however, were not expressly aimed at Oregon, but at plaintiff herself. Injury to a forum resident is not sufficient to demonstrate that conduct was directed at that forum. *Picot*, 780 F.3d at 1214 (citing *Walden*, 571 U.S. at 285). Plaintiff's generalized allegations that PeaceHealth operates facilities in Oregon and hires Oregon residents, without more detail, do not permit the Court to

assess the extent to which PeaceHealth is present in the forum and, regardless, do not constitute the kind of "suit-related conduct" that creates "a substantial connection with the forum State" necessary to establish minimum contacts. *Walden*, 571 U.S. at 284. Finally, plaintiff's alleged injuries are not connected to Oregon in any meaningful way. Loss of wages and reputational and professional harms would be felt by plaintiff in any state she might live in or travel to, and are thus not sufficiently connected to Oregon to establish minimum contacts. *See Picot*, 780 F.3d at 1215.

Plaintiff has failed, therefore, to demonstrate that defendant purposefully availed itself of or directed activities toward Oregon and has not satisfied the first prong of the specific jurisdiction inquiry.

### b.    Prong Two

To determine whether the claims arise out of or relate to a defendant's forum-related activities, the court uses a "but for" test. *Harris Rutsky & Co. Ins. Servs. V. Bell & Clements Ltd.*, 328 F.3d 1122, 1131-32 (9th Cir. 2003)). The test asks "whether the plaintiff would not have suffered injury 'but for' the defendant's forum-related conduct." *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1092 (D. Or. 2016). "Under the 'but for' test, 'a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action.'" *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) (quoting *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 894 (9th Cir. 1996)), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015).

Plaintiff's claims arise out of defendant's alleged retaliation and termination for actions related to her employment at the Washington hospital facility and a failure to pay wages during a period of that employment. As discussed *supra*, however, these acts, which were undertaken in Washington and caused harm to plaintiff individually, do not constitute forum-related conduct. Plaintiff argues that but for PeaceHealth's employment of Oregon residents in its Vancouver, Washington facility, her claims would not have arisen. Pl.'s Resp. 11. Employing Oregon residents does not necessarily constitute forum-related conduct; plaintiff does not allege for example, that defendant reached into Oregon to solicit Oregon resident nurses or her specifically. Regardless, the act of employing Oregon residents lacks a sufficient nexus with

plaintiff's alleged injuries, which she would have suffered regardless of her state of residence.

Plaintiff's claim does not arise out of or relate to defendant's forum-related activities, and thus does not satisfy the second prong of the specific jurisdiction inquiry.

c.      Prong Three

The Ninth Circuit has identified seven factors to consider in weighing the reasonableness of personal jurisdiction, the third prong:

> "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."

*Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 866-67 (9th Cir. 2003) (quoting *Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1132).

Because plaintiff has failed to satisfy the first two prongs establishing personal jurisdiction, the burden does not shift to defendant to demonstrate that the exercise of jurisdiction would not be reasonable.   The Court, accordingly, need not consider the reasonableness of exercising personal jurisdiction in this District, and finds that plaintiff has not demonstrated that sufficient minimum contacts exist to exercise specific jurisdiction over defendant in this District.

Plaintiff has not demonstrated that defendant is subject to general or specific personal jurisdiction in the District of Oregon.  Accordingly, defendant is not a resident of this District, and venue is not proper under 28 U.S.C. § 1391(b)(1).

**B.      28 U.S.C. § 1391(b)(2) – Substantial Part of the Events or Omissions**

Defendant argues that venue is not proper under 28 U.S.C. § 1391(b)(2) because all events and omissions giving rise to plaintiff's claim occurred in Vancouver, Washington, which is outside of this District.  Mot. to Dismiss 9.

Nearly all of the events described in the complaint occurred in Washington.  Plaintiff was employed at PeaceHealth's Vancouver, Washington facility and registered complaints with executives and

supervisors at that facility and the Washington State Department of Health.  The alleged retaliatory conduct included administrative leave, investigation, and termination at the Vancouver, Washington facility and a complaint lodged by defendant with the Washington State Board of Nursing.  Although plaintiff appeared in Oregon Public Broadcasting and KATU programs that may have been filmed in or broadcast in Oregon, the great majority of the events alleged occurred in Washington, outside of this District.

Plaintiff has not established that a substantial part of the events giving rise to her claim occurred in Oregon.  Accordingly, venue is not proper under 28 U.S.C. § 1391(b)(2).

**C.      28 U.S.C. § 1391(b)(3) – Alternative Venue**

Defendant argues that venue is appropriate in the Western District of Washington, where defendant is subject to personal jurisdiction and where the alleged events occurred.  Mot. to Dismiss 10. Defendant is incorporated and has its principal place of business in Washington.  Compl. ¶ 2.  It is thus subject to general jurisdiction there.  In addition, the events giving rise to plaintiff's claim occurred almost exclusively in Vancouver, Washington.  Venue is, therefore, proper in the Western District of Washington. Because a district exists in which venue is proper, and because the District of Oregon does not have personal jurisdiction over defendant, venue is not proper under 28 U.S.C. § 1391(b)(3).

Plaintiff has failed to establish that this Court is the proper venue for her case under any of the three categories of 28 U.S.C. § 1391(b).  Accordingly, venue is improper in the District of Oregon.

**D.      Motion to Transfer Venue**

Having determined that venue is improper, the court must decide whether to dismiss or transfer the action.

Defendant asks that, if the Court does not dismiss plaintiff's complaint, it transfer this action to the Western District of Washington.  Mot. to Dismiss 2, 10.  Plaintiff concurs that, should the Court find that venue is improper in the District of Oregon it should, in the interest of justice, transfer the case to the Western District of Washington rather than dismiss it.  Pl.'s Resp. 14.

This action could have been properly brought in the Western District of Washington.  It is in the interest of justice to transfer this action to a forum in which it could have been brought and would be

justice-defeating to dismiss the action.  Accordingly, the Court exercises its discretion to transfer the case to the Western District of Washington.

## CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss, ECF [11], is DENIED. Defendant's Alternative Motion to Transfer Venue is GRANTED.  The Clerk of the Court is respectfully directed to transfer this case to the Western District of Washington.

IT IS SO ORDERED.

DATED this 6th day of December, 2023.

Adrienne Nelson
United States District Judge